IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA LYNN DOWLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY,[1] )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 23-cv-16-DES |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Patricia Lynn Dowler ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On September 23, 2020, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 16, 245-68). Claimant alleges she has been unable to work since March 1, 2020, due to problems with her back, hands, wrists, arms, knees, shoulders, and vision; irritable bowel syndrome; anxiety; and depression. (R. 245, 251, 291). Claimant was 51 years old on the date of the ALJ's decision. (R. 36, 250, 265). She has a ninth-grade education and past work as a retail cashier, delivery driver of automobile parts, home healthcare provider, and janitor. (R. 34, 292).

Claimant's claims for benefits were denied initially and on reconsideration, and she requested a hearing. (R. 76-112, 137-38). ALJ J. Leland Bentley conducted an administrative hearing and issued a decision on July 26, 2022, finding Claimant not disabled. (R. 16-36, 44-70). The Appeals Council denied review on November 9, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on January 10, 2023. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her onset date of March 1, 2020. (R. 19). At step two, the ALJ found Claimant had severe impairments of lumbar spine degenerative disc disease, status post remote fusion surgery; osteoarthritis of multiple sites; major depressive disorder; anxiety disorder; and borderline intellectual functioning. *Id.* At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 21-24).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> occasional climbing of ramps and stairs; no climbing of ladders or scaffolding; occasional stooping, kneeling, crouching, and crawling; and avoidance of unprotected heights and dangerous moving machinery. She can understand, remember, and apply simple, multistep instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple, multistep work tasks with routine supervision. She can tolerate occasional interaction with others in the workplace and would be limited to occasional work-related interact[ion] with the general public. She can adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually. She can recognize and avoid normal workplace hazards.

(R. 24). The ALJ provided a summary of the evidence that went into this finding. (R. 24-34).

At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 34). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including packer, assembler, wireworker, food inspector, cloth inspector, and belt inspector. (R. 35). Accordingly, the ALJ concluded Claimant was not disabled. (R. 36).

IV.   **Issues Presented**

Claimant asserts the ALJ erred by: (1) failing to properly evaluate the medical source opinion of Paula Brown, an advanced practice registered nurse (Docket No. 15 at 9-14), and (2) establishing the RFC based on his own interpretation of the evidence rather than a medical opinion. *Id.* at 14-17. The Court finds no reversible error in the ALJ's decision.

V.   **Analysis**

   A.   **ALJ Properly Evaluated Nurse Brown's Opinion**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. A "medical opinion" is a statement from a medical source about

4

what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These abilities include the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)[.]" 20 C.F.R. §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. §§ 404.1520c(a), (c); 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3).

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support her medical opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§404.1520c(c)(2), 416.920c(c)(2).

On June 13, 2022, Nurse Brown completed a "Physical Assessment" form for Claimant, outlining her diagnoses and related limitations. (R. 408-09). Nurse Brown stated that Claimant's diagnoses included osteoarthritis, multiple joints; lumbago with sciatica; chronic pain; and muscle spasm, and that these conditions would "frequently" interfere with Claimant's ability to maintain attention and concentration required to perform simple work-related tasks. (R. 408). She indicated drowsiness and dizziness were side effects of Claimant's medications that may impact her ability to work. *Id.* Nurse Brown opined that during an eight-hour workday, Claimant could sit for eight hours and stand/walk for three hours. *Id.* Additionally, Nurse Brown opined that Claimant would need unscheduled breaks every two-to-three hours lasting twenty minutes. *Id.* As to exertional limitations, Nurse Brown found Claimant could frequently lift less than ten pounds, occasionally lift ten pounds, and could never lift above twenty pounds. As to manipulative limitations, Nurse Brown found in an eight-hour workday, Claimant could use her right hand to grasp, turn, and twist objects 50% of the time and could use her left hand 75% of the time; she could use her bilateral fingers for fine manipulation 100% of the time; and she could use her right arm for reaching 30% of the time and her left arm 75% of the time. *Id.* Nurse Brown further indicated Claimant would be absent from work more than four days per month. (R. 409).

In discussing the medical source opinion evidence, the ALJ concluded Nurse Brown's opinions were unpersuasive. (R. 30). Regarding the supportability of Nurse Brown's opinions, the ALJ noted that she listed diagnoses, but did not explain how such diagnoses supported the limitations she identified. *Id.* The ALJ also found Nurse Brown's own examination findings failed to support the degree of limitation she identified, noting she recorded no range of motion limitations and consistently recorded Claimant was in no acute distress and exhibited a non-focal neurological examination, intact cranial nerves, and a normal gait. (R. 31).

As to Nurse Brown's opinion that drowsiness and dizziness were side effects of Claimant's medication, the ALJ found such opinion unsupported by Nurse Brown's own treatment notes, which indicated Claimant repeatedly denied weakness, fatigue, change in energy, and dizziness. *Id.* Moreover, the only time Claimant did endorse weakness and fatigue, Nurse Brown found Claimant was alert on examination and made no adjustments to her medications. (R. 30-31). The ALJ also found such opinion inconsistent with the fact that Claimant was rarely, if ever, noted to be anything but awake or alert throughout the evidence of record. (R. 31).

Regarding Nurse Brown's manipulative limitations, the ALJ found they were inconsistent with both Dr. Krishnamurthi's consultative physical examination findings of normal grip strength, full range of motion in Claimant's fingers and upper extremities, and intact ability to perform gross and fine manipulation, and Claimant's testimony that she draws as a hobby. *Id.* As to the exertional limitations Nurse Brown identified, the ALJ found them inconsistent with the following: (1) Claimant's report to Dr. Krishnamurthi that she can walk, stand for 40 minutes, sit for 40 minutes, and lift 40 pounds; (2) Claimant's report to Dr. Vaught that she can walk slowly and can stand for about an hour and a half; (3) Claimant's ability to work part-time as a motel cleaner; and (4) Claimant's testimony that she could perform her job as a retail clerk if she did not have to stock and could sit "every now and then." *Id.*

Lastly, the ALJ found Nurse Brown's attention and concentration limitations were not supported by her own treatment notes, which recorded no mental status examination deficits and indicated Claimant's symptoms improved with treatment and were inconsistent with Dr. Vaught's consultative mental status examination, which noted Claimant's concentration, persistence, and pace as a "relative strength." (R. 31, 421).

Despite the ALJ's detailed analysis, Claimant nonetheless asserts that the ALJ failed to provide a legitimate rationale for finding Nurse Brown's opinions unpersuasive. The Court finds the ALJ applied the correct legal standards and his determination that Nurse Brown's opinions were unpersuasive is supported by substantial evidence. First, with respect to supportability, the ALJ correctly made the specific finding that Nurse Brown's opinions did not align with her own treatment notes, physical examination findings, and mental status examination findings. (R. 30-31). The ALJ also correctly noted the form Nurse Brown filled out contains little more than bare diagnoses and conclusions without any rationale for the conclusions she reached. These reasons are appropriate bases for finding Nurse Brown's opinion unsupported. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be."); *see also S.P. v. Kijakazi,* 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (explaining that a supportability discussion "could include, for example, whether [the medical source's] treatment notes supported her opinion, the check-the-box format of her opinion, whether [the medical source] examined plaintiff, and whether [the medical source] explained how or why she reached her opinion."). Accordingly, the ALJ adequately addressed the supportability of Nurse Brown's opinions and the Court sees no legal error.

The ALJ's consistency analysis is likewise free from error. The Court first notes the ALJ spent numerous pages summarizing Claimant's testimony, her treatment records, and the medical source opinion evidence. (R. 24-33). The ALJ then correctly concluded that Nurse Brown's opinions were inconsistent with other evidence of record, including Dr. Krishnamurthi's consultative physical examination, Dr. Vaught's consultative mental status examination,

Claimant's own testimony and statements to her other providers, and Claimant's ability to work part-time cleaning a motel. (R. 31). These discrepancies are proper considerations for an ALJ to make when evaluating the consistency of a medical source opinion as part of a persuasiveness analysis. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."); *see also S.P. v. Kijakazi,* No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) ("Consistency . . . is an all-encompassing inquiry that focuses on how well a medical source opinion is supported, or not supported, by the entire record." (quotation omitted)). Accordingly, the ALJ adequately addressed the consistency of Nurse Brown's opinions and the Court sees no legal error.

In essence, Claimant asks the Court to reweigh the evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). Instead, this Court reviews "only the *sufficiency* of the evidence, not its weight" and does not displace the Commissioner's choice between two fairly conflicting views, even if the evidence may also have supported contrary findings. *Id.* at 1257-58. In sum, the ALJ's decision indicates that he considered the entire record and evaluated the evidence in accordance with the appropriate standards when evaluating the persuasiveness of Nurse Brown's opinions. Accordingly, there is no error, and ALJ's decision finding Nurse Brown's opinions unpersuasive is supported by substantial evidence.

> **B.      ALJ Did Not Substitute His Own Medical Opinion**

Plaintiff next contends the ALJ substituted his own medical opinion, rather than adhering to the medical opinions of Nurse Brown or Dr. Krishnamurthi.[3] (Docket No. 15 at 14-17). As

---

[3] Because the Court finds the ALJ applied the correct legal standards in determining that Nurse Brown's opinion was unpersuasive, and that such determination was supported by substantial evidence, the Court limits the analysis here to Dr. Krishnamurthi's opinion.

support for this contention, Claimant suggests there is no opinion in the record indicating Claimant was capable of performing light work. (*Id.* at 15.). In essence, Claimant contends the RFC is not supported by substantial evidence, because the standing and walking limitations associated with light work do not coincide with any medical source opinion.

It is well established that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Ultimately, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As relevant to this appeal, Dr. Krishnamurthi opined that during an 8-hour workday, Claimant could stand for three hours total and could walk for three hours total. (R. 384). The ALJ concluded these functional limitations were not supported by Dr. Krishnamurthi's own findings that Claimant had a stable gait with normal speed, could heel walk, could toe walk, and could walk a block at a reasonable pace on rough or even surfaces. (R. 32). The ALJ also found Dr. Krishnamurthi's opinion inconsistent with Nurse Brown's repeated findings of non-focal neurological examination, grossly intact cranial nerves, normal gait, no deficits in strength or range of motion, and that Claimant was in no acute distress. (*Id.*). Claimant contends this demonstrates that the ALJ substituted his own medical opinion for that of Dr. Krishnamurthi. The Court disagrees. The ALJ simply determined that Dr. Krishnamurthi's standing and walking limitations were not supported by his own examination findings and were inconsistent with Nurse Brown's examination findings, which are legitimate reasons for finding the opinion not persuasive. In the absence of a persuasive medical source opinion regarding Plaintiff's standing and walking limitations, the ALJ properly evaluated such limitations based on the record as a whole. *See, e.g.*, *McDonald v. Astrue*, 492 F. App'x 875, 885-86 (10th Cir.

2012) (unpublished) (rejecting Plaintiff's "contention that an ALJ is not competent, in the absence of a medical opinion, to assess the severity of mental symptoms and determine the extent of the limitations that result based on the evidence in the claimant's medical records, her daily activities, and her positive response to medication").

In any event, contrary to Claimant's assertion, Dr. Krishnamurthi's opinion is consistent with light work. Unlike Nurse Brown, who found Claimant could stand/walk for three hours, Dr. Krishnamurthi found Claimant could stand for three hours and could walk for three hours, *i.e.,* a combined total of six hours, which is consistent with the standing and walking requirements for light work. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Thus, the ALJ found Dr. Krishnamurthi's standing and walking limitations unpersuasive but adopted his opinion that Claimant could perform light work. "It is not error for the ALJ to credit a portion of a medical opinion and discount other portions of the opinion." *Jones v. Astrue,* 500 F.Supp 2d 1277, 1285 (D. Kan 2007). Accordingly, the ALJ's RFC limiting Claimant to a limited range of light work is supported by substantial evidence.

## VI.   Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 18th day of March, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE